CONSCOOP—CONSORZIA FRA
COOPERATIVE DI PROD.
E LAVORO, Plaintiff,

v.

**UNITED STATES**, Defendant.

No. 03–2212C.

United States Court of Federal Claims.

Filed Aug. 13, 2004[1].

Reissued for Publication Sept. 30, 2004.

1. This opinion was issued under seal on August 13, 2004. The parties were instructed to identify protected material subject to redaction. In response, the parties have stipulated that the opinion does not contain protected material. The original opinion is, therefore, reissued unsealed.

Jeffrey I. Gdanski, Suffern, New York, for the plaintiff. Sam Z. Gdanski and Scott H. Gdanski, of counsel.

Thomas D. Dinackus, Trial Attorney; Harold D. Lester, Jr., Assistant Director; David M. Cohen, Director, Commercial Litigation Branch; Peter D. Keisler, Assistant Attorney General, Civil Division, United States Department of Justice, for the defendant. Robert E. Little, Naval Facilities Engineering Command, of counsel.

## OPINION

HORN, Judge.

The plaintiff, Conscoop—Consorzia Fra Cooperative Di Prod. E. Lavoro (Conscoop), filed a post-award bid protest seeking to set aside the award of a contract by the United States Navy to Lotos S.r.l. (Lotos) for improvements to the main gate and renovation of garage/building 452 at the United States Naval Air Station in Sigonella, Italy. The plaintiff contends that the Navy abused its discretion by improperly rejecting Conscoop's price proposal as untimely. The plaintiff seeks permanent injunctive relief requiring the Navy to: (1) cancel the award of the solicitation to Lotos; (2) evaluate Conscoop's price proposal, as submitted; and (3) award the solicitation to Conscoop, since its bid price was lower than that of Lotos. In its complaint, plaintiff alleges that it will incur 1,118,714 Euros in lost profits, if injunctive relief is not granted. The parties have filed cross-motions for judgment on the administrative record.

## FINDINGS OF FACT

This bid protest concerns Solicitation N33191–02–R–1056 (the solicitation), issued

by the Navy[2] on July 2, 2003 only via the Internet World Wide Web. The solicitation requests proposals regarding a contract for improvements to the main gate and renovation of garage/building 452 at the Naval Air Station in Sigonella, Italy. The "estimated cost" of the project is listed as "between $10,000,000 and $25,000,000 U.S. dollars."

The solicitation includes the following language:

This solicitation will be issued via the Internet World Wide Web at *http://esol.navfac.navy.mil.* CDs will NOT be available, nor will hard copies be made available. Amendments and notices will be posted on the web site http://esol.navfac.navy.mil [sic] for downloading. THIS WILL BE THE ONLY METHOD OF DISTRIBUTING AMENDMENTS AND NOTICES. The Government will no longer distribute amendments by fax or CD. It is the offeror's responsibility to check the web site periodically for any amendments and notices to this solicitation.

(Emphasis in original). The solicitation provides for the electronic submission of proposals as follows: "A. **Electronic transmission** of the offer to perform the work required is due at the email address specified in Section 00201 by: For technical proposals: 18 Jul 2003, *1400* (*hours*) For price proposals: 5 Aug 2003, *1400* (*hours*). The hours are stated in local time." (Emphasis in original). Section 00201 of the solicitation is titled "Instructions to Offerors" and contains various subsections, including "1.7 Instructions for the Submission of Offers and Other Information." Subsection 1.7 states: "a. *GENERAL:* Each offeror must (1) submit a price proposal and (2) submit technical proposal that pertains to the technical factors described in this solicitation. b. Price proposal. The offeror shall electronically submit the price proposal as a pdf file ... to: *kaimikauje@ efamed.navfac.navy.mil.*" The electronic mail address listed is that of Joan E. Kaimikaua, the Navy contract specialist assigned to this procurement, whose office is located in Naples, Italy.

Further, subsection 1.4 of Section 00201 of the solicitation is standard Federal Acquisition Regulation (FAR) clause 52.215–1, "Instructions to Offerors—Competitive Acquisition (May 2001)," which states in pertinent part:

(c)(3) *Submission, modification, revision, and withdrawal of proposals.*

(i) Offerors are responsible for submitting proposals, and any modifications, or revisions, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. If no time is specified in the solicitation, the time for receipt is 4:30 p.m., local time, for the designated Government office on the date that proposal or revision is due.

(ii)(A) Any proposal, modification, or revision, received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered unless it is received before award is made, the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition; and—

(1) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of proposals; or

(2) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers; or

(3) It is the only proposal received.

(B) However, a late modification of an otherwise successful proposal that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted.

(iii) Acceptable evidence to establish the time of receipt at the Government installation includes the time/date stamp of that installation on the proposal wrapper, other documentary evidence of receipt main-

---

2. More specifically, the solicitation was issued by: "Department of the Navy, Engineering Field

Activity Mediterranean, Viale Porto Box 51, Aeroporto Capodichino, 80144 Napoli[, Italy]."

tained by the installation, or oral testimony or statements of Government personnel. (iv) If an emergency or unanticipated event interrupts normal Government processes so that proposals cannot be received at the office designated for receipt of proposals by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation, the time specified for receipt of proposals will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

\* \* \* \*· \* \*

(f) *Contract award.*

(1) The Government intends to award a contract or contracts resulting from this solicitation to the responsible offeror(s) whose proposal(s) represents the best value after evaluation in accordance with the factors and subfactors in the solicitation.

\* \* \* \* \* \*

(3) The Government may waive informalities and minor irregularities in proposals received.

48 C.F.R. § 52.215–1(c)(3)–(f)(3) (2002) (hereafter FAR 52.215–1(c)(3)–(f)(3)).

Finally, Section 00202 of the solicitation is titled, "Evaluation Factors For Award." Paragraph 1.1 of Section 00202 states, in part:

**1.1 GENERAL**

a. The Government will evaluate each proposal as a whole on the basis of price and technical merits, and award the contract to the offeror whose offer represents the best value to the Government. The following technical factors are included:

Factor 1: Organizational Experience

Factor 2: Organizational Past Performance

b. In terms of importance, the Government considers Factors 1 and 2 to be equal to each other, and together, are approximately equal in importance to price.

. A number of links appeared on the top of the first page of the Navy web site, including "Get Solicitation Files." In this way, the web site provided access to the solicitation.

The first page of the web site also contained text, including the titles, "Description of Advertised Solicitation," followed by information regarding the solicitation number, title, and due date, and "Synopsis or Description." On the Navy web site, the due date of the solicitation was listed in the following manner: "**Due Date:** 05–Aug–2003 1400 hrs (U.S. Time Zones)." The Navy web site also instructed bidders to refer to the web site for amendments and notices:

This solicitation will be issued via the Internet World Wide Web at http://esol.navfac.navy.mil. CDs will NOT be available, nor will hard copies be made available. Amendments and notices will be posted on the web site http://esol.navfac.navy.mil for downloading. THIS WILL BE THE ONLY METHOD OF DISTRIBUTING AMENDMENTS AND NOTICES. It is the bidder's responsibility to check the web site periodically for any amendments and notices to this solicitation.

(Emphasis in original). The Navy web site further informed prospective bidders that: "Unless otherwise indicated in the synopsis this is an Internet only Solicitation. It is the bidders/offerors responsibility to check this site daily in order to be notified of any changes to this solicitation."

Seven companies submitted timely technical proposals, including plaintiff Conscoop. The Navy rated Conscoop's technical proposal as "Good" and Lotos' technical proposal as "Excellent." Six of the seven companies that had submitted technical proposals also submitted timely price proposals to the electronic mail address listed in the solicitation by the deadline of 1400 hours, or 2:00 p.m., Naples, Italy time on August 5, 2003. The Navy received one proposal from a company called AIA the day before the deadline, on August 4, 2003. Five proposals were received on August 5, 2003, at the following Italian times: Pizzarotti (10:13 a.m.); Maltauro (10:14 a.m.); Casal (in three increments from 1:12 p.m. to 1:55 p.m.); Lotos (1:27 p.m.); and Impregilo (1:39 p.m.). Conscoop's price proposal was the only one received at the designated e-mail address after the deadline, at 3:41 p.m., Italian time, on August 5, 2003.

Conscoop alleges that its price proposal was sent in a timely fashion as an attachment to an e-mail, in pdf format, on August 5, 2003 at 1:58 p.m. Italian time. The record includes a number of documents that confirm that Conscoop electronically transmitted its proposal at 1:58 p.m. Italian time, as follows: first, a copy of the e-mail that transmitted Conscoop's price proposal indicates that it was sent on "Tuesday, August 05, 2003" at "1:58 PM"; second, the "internet header" of Conscoop's price proposal e-mail, which tracks the "route" of the e-mail sent to Ms. Kaimikaua, has the following time stamp: "Date: Tue, 5 Aug 2003 13:58:03 + 0200" [1:58:03 p.m.]; third, the Navy's reply e-mail, sent to Conscoop at 4:37 p.m. Italian time in response to Conscoop's e-mail relaying its price proposal, indicates that Conscoop's original message with its price proposal was "Sent: Tuesday, August 05, 2003 1:58 PM"; and fourth, the declaration of the Navy's Information Technology expert, Nicholas Falcone, states that Conscoop's price proposal was sent at 1:58 p.m. Italian time. In his declaration, Mr. Falcone states that:

The 1:58 pm or 13:58 time stamp ... was not generated from a government server, computer or other piece of government equipment. When using Microsoft Outlook Express (as the sender did), this time stamp originates from the sender's computer, and is placed on the email message at the time the message leaves the originator's Outbox.... Ms Kaimikaua uses Microsoft Outlook to view her email. In Outlook, the time displayed on the "face" of the email in the recipient's mailbox is the time the message left the sender's mailbox, converted to local time if applicable.... In either case, this is not the time the message is received at the intended recipient's computer or server.

The plaintiff has offered no evidence or declaration to rebut Mr. Falcone's technical explanation.

After the 2:00 p.m. Italian time deadline for proposal submission had passed, Ms. Kaimikaua sent Conscoop an e-mail message at 2:28 p.m. Italian time, stating that she had not received a price proposal from plaintiff, as follows: "Please verify that you did not submit a price proposal in response to this solicitation. We had received your technical proposal on 18 Jul, but note that we do not find your price proposal delivered." The record indicates that, shortly after Ms. Kaimikaua sent this e-mail, a Conscoop representative, identified as Vera Amante, telephoned Ms. Kaimikaua. According to the record, Ms. Amante informed Ms. Kaimikaua that a power outage had prevented Conscoop from submitting its price proposal by the 2:00 p.m. Italian time deadline.[3] Ms. Amante inquired as to whether an exception could be made to permit the Navy to consider Conscoop's proposal. In response, Ms. Kaimikaua informed Ms. Amante that, pursuant to the solicitation, the Navy could not consider Conscoop's late proposal.

Conscoop's electronic mail message with its price proposal arrived at the Navy's server at 3:40 p.m. Italian time on August 5, 2003, and was received at the e-mail address designated in the solicitation at 3:41 p.m. Italian time, one hour and forty-one minutes after the 2:00 p.m. Italian time deadline.[4] At 4:36 p.m. Italian time, the Navy informed Conscoop via e-mail that its price proposal "was received at 3:41 pm, after the time designated for receipt of proposals."

Conscoop's price proposal was sent at 1:58 p.m. Italian time, arrived at Conscoop's server at 14:22 (2:22 p.m.) Italian time, and arrived at the Navy's server at 15:40 (3:40 p.m.) Italian time, August 5, 2003, which "is consistent with the time appearing on Ms Kaimikaua's Microsoft Outlook indicating that she received the email from 'Giuseppe Fichera' at 3:41 pm ...." Mr. Falcone states: "I could not explain the cause of the delay between the transmission of the email between the sender's computer and email server, and our eventual receipt of the email. I could only verify that there was such a delay."

3. According to the defendant, there were no problems with Ms. Kaimikaua's computer in Italy, nor with the Navy's electronic mail system, that might have prevented, delayed, or interfered with Ms. Kaimikaua's receipt of electronic mail on August 5, 2003. In her declaration, Ms. Kaimikaua states that she successfully "received and sent numerous electronic mail messages throughout the day on August 5, 2003, and did not experience any problems sending or receiving these messages."

4. As explained in the declaration submitted by the Navy's Information Technology expert, Nicholas Falcone, the internet header indicates that

On August 6, 2003, the contracting officer, Mary Langfeldt, sent a letter to Conscoop indicating that its price proposal would not be considered due to its late submission: "[S]ince your price proposal was received at the Government office designated in the solicitation after the exact time specified for receipt of offers, it is therefore late and we regret to inform you that it will not be considered." On August 8, 2003, the Navy awarded the contract to Lotos for 10,992,-860.90 Euros. Conscoop's price proposal was 636,284 Euros less than that of Lotos, when change order rates are taken into account, as required to determine the evaluated price.

Initially, Conscoop filed a protest with the General Accounting Office (GAO). Conscoop later voluntarily withdrew its GAO protest and filed a protest in this court

## DISCUSSION

The plaintiff filed a post-award bid protest alleging that the Navy abused its discretion by unreasonably failing to evaluate Conscoop's price proposal because the Navy improperly determined that plaintiff's price proposal was untimely. The Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996), amended the Tucker Act and provided the United States Court of Federal Claims with post-award bid protest jurisdiction for actions filed on or after December 31, 1996. *See* 28 U.S.C. § 1491(b)(1)-(4) (2000). The statute provides that post-award protests of agency procurement decisions are to be reviewed under Administrative Procedure Act (APA) standards, making applicable

the standards outlined in *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir. 1970) and the line of cases following that decision. *See, e.g., Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed.Cir. 2004); *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed.Cir.), *reh'g and reh'g en banc denied* (2003); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed.Cir.2001).

Agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (2)(D) (2000).[5] In discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit has discussed specifically subsections (2)(A) and (2)(D) of 5 U.S.C. § 706. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d at 1332 n. 5; *see also Banknote Corp. of Am. v. United States*, 365 F.3d at 1350 ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' ") (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed.Cir.2000)); *Info. Tech. & Applications Corp. v. United States*, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of

---

5. The full language of section 706 of the APA provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.
5 U.S.C. § 706 (2000).

discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1085 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001) ("The APA provides that a reviewing court must set aside agency actions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (Supp. V 1999)."); *RAMCOR Servs. Group, Inc. v. United States,* 185 F.3d 1286, 1290 (Fed.Cir.1999).

In *Impresa Construzioni Geom. Domenico Garufi v. United States,* the court wrote:

Under the APA standards that are applied in the *Scanwell* line of cases, a bid award may be set aside if either: (1)[T]he procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure .... When a challenge is brought on the first ground, the courts have recognized that contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them" in the procurement process. *Latecoere Int'l. Inc. v. United States Dep't of Navy,* 19 F.3d 1342, 1356 (11th Cir.1994). Accordingly, the test for reviewing courts is to determine whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *id.,* and the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" *Saratoga Dev. Corp. v. United States,* 21 F.3d 445, 456 (D.C.Cir. 1994). When a challenge is brought on the second ground, the disappointed bidder must show "a clear and prejudicial violation of applicable statutes or regulations." *Kentron [Hawaii, Ltd. v. Warner,]* 480 F.2d [1166,] 1169 [(D.C.Cir.1973)]; *Latecoere,* 19 F.3d at 1356.

*Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332–33 (selected citations omitted); *see also Banknote Corp. of Am. v. United States,* 365 F.3d at 1351; *OMV Med., Inc. v. United States,* 219 F.3d 1337, 1343 (Fed.Cir.2000).

██ A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 995–96 (Fed.Cir.1996); *Labat–Anderson Inc. v. United States,* 50 Fed.Cl. at 106; *Emery Worldwide Airlines, Inc. v. United States,* 49 Fed.Cl. 211, 222, *aff'd,* 264 F.3d 1071 (Fed. Cir.2001); *Dynacs Eng'g Co. v. United States,* 48 Fed.Cl. at 619; *Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. 388, 392 (1999), *appeal dismissed,* 6 Fed.Appx. 867 (Fed.Cir.2001). The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

[T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *see also In re Sang–Su Lee,* 277 F.3d 1338, 1342 (Fed.Cir.2002) ("The agency must present a full and reasoned explanation of its decision .... The reviewing court is thus enabled to perform a meaningful review ....").

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. at 43, 103 S.Ct. 2856. "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971)); *see also Seaborn Health Care, Inc. v. United States,* 55 Fed.Cl. at 523 (quoting *Honeywell,*

*Inc. v. United States,* 870 F.2d at 648 (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971))). As stated by the United States Supreme Court:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (citations omitted); *see also Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), *reh'g denied,* 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975); *In re Sang–Su Lee,* 277 F.3d at 1342; *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed.Cir.), *reh'g denied* (2000) ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.") (citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. at 285, 95 S.Ct. 438); *Lockheed Missiles & Space Co. v. Bentsen,* 4 F.3d 955, 959 (Fed. Cir.1993); *ManTech Telecomms. and Info. Sys. Corp. v. United States,* 49 Fed.Cl. 57, 63 (2001); *Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. at 392 ("Courts must give great deference to agency procurement decisions and will not lightly overturn them.") (citing *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)); *Redland Genstar, Inc. v. United States,* 39 Fed.Cl. 220, 231 (1997); *Mike Hooks, Inc. v. United States,* 39 Fed. Cl. 147, 154 (1997); *Cincom Sys., Inc. v. United States,* 37 Fed.Cl. 663, 672 (1997); *Commercial Energies, Inc. v. United States,* 20 Cl.Ct. 140, 145 (1990) ("In simple terms, courts should not substitute their judgments for pre-award procurement decisions unless the agency clearly acted irrationally or unreasonably.") (citations omitted).

Similarly, in *E.W. Bliss Co. v. United States,* the United States Court of Appeals for the Federal Circuit offered guidance on the applicable standard of review:

> Procurement officials have substantial discretion to determine which proposal represents the best value for the government. *See Lockheed Missiles & Space Co., Inc. v. Bentsen,* 4 F.3d 955, 958 (Fed.Cir.1993); *cf. Widnall v. B3H,* 75 F.3d 1577 (Fed. Cir.1996) (holding that Board of Contract Appeals should defer to agency's best value decision as long as it is "grounded in reason ... even if the Board itself might have chosen a different bidder"); *In re General Offshore Corp.,* B–251969.5, B–251969.6, 94–1 Comptroller Gen.'s Procurement Decisions (Federal Publications Inc.) ¶ 248, at 3[, 1994 WL 129008] (Apr. 8, 1994) ("In a negotiated procurement, any proposal that fails to conform to material terms and conditions of the solicitation should be considered unacceptable and may not form the basis for an award. Where an evaluation is challenged, we will examine the agency's evaluation to ensure that it was reasonable and consistent with the evaluation criteria and applicable statutes and regulations, since the relative merit of competing proposals is primarily a matter of administrative discretion.") (citations omitted). Bliss has not shown that the Mint abused its discretion in awarding the contract to Pressmasters.

\*    \*    \*    \*    \*    \*

Bliss' [other challenges to the procurement] deal with the minutiae of the procurement process in such matters as technical ratings ... which involve discretionary determinations of procurement officials that a court will not second guess. *See Lockheed Missiles & Space Co.,* 4 F.3d at 958; *Grumman Data Systems Corp. v. Widnall,* 15 F.3d 1044, 1048 (Fed.Cir.1994) ("[S]mall errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement.")  ....

*E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed.Cir.1996); *see also JWK Int'l Corp. v. United States*, 49 Fed.Cl. 371, 388 (2001), *aff'd*, 279 F.3d 985 (Fed.Cir.), *reh'g denied* (2002).

In a negotiated procurement, contracting officers are generally afforded even greater decision making discretion, in comparison to their role in sealed bid procurements. "It is well-established that contracting officials are accorded broad discretion in conducting a negotiated procurement . . . ." *Hayes Int'l Corp. v. United States*, 7 Cl.Ct. 681, 686 (1985) (citing *Sperry Flight Sys. v. United States*, 212 Ct.Cl. 329, 339–40, 548 F.2d 915 (1977)); *see also Galen Med. Assoc., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed.Cir. 2004); *Am. Tel. and Tel. Co. v. United States*, 307 F.3d 1374, 1379 (Fed.Cir.2002), *cert. denied*, 540 U.S. 937, 124 S.Ct. 56, 157 L.Ed.2d 249 (2003); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d at 958; *Cybertech Group, Inc. v. United States*, 48 Fed.Cl. at 646 ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations."). In *Burroughs Corp. v. United States*, the court described the broad discretion afforded a contracting officer in a negotiated procurement as follows:

> Remarking on the contracting officer's discretion in negotiation the court in *Sperry Flight Systems Division v. United States*, 212 Ct.Cl. 329, 339, 548 F.2d 915, 921 (1977) noted that "the decision to contract—a responsibility that rests with the contracting officer alone—is inherently a judgmental process which cannot accommodate itself to absolutes, at least not without severely impairing the quality of the judgment called for . . ." and that, "effective contracting demands broad discretion." Because of the breadth of discretion given to the contracting officer in negotiated procurement, the burden of showing this discretion was abused, and that the action was "arbitrary and capricious" is certainly much heavier than it would be in a case of formal advertising.

*Burroughs Corp. v. United States*, 223 Ct.Cl. 53, 65, 617 F.2d 590, 598 (1980) (citation omitted; omissions in original); *see also Gal-*

*en Med. Assoc., Inc. v. United States*, 369 F.3d at 1330; *LaBarge Prods., Inc. v. West*, 46 F.3d 1547, 1555 (Fed.Cir.1995); *JWK Int'l Corp. v. United States*, 49 Fed.Cl. at 388; *ManTech Telecomms. and Info. Sys. Corp. v. United States*, 49 Fed.Cl. at 64.

The United States Court of Appeals for the Federal Circuit also has stated that:

> Effective contracting demands broad discretion. *Burroughs Corp. v. United States*, [223 Ct.Cl. 53,] 617 F.2d 590, 598 (1980); *Sperry Flight Sys. Div. v. United States*, 548 F.2d 915, 921, 212 Ct.Cl. 329 (1977); *see NKF Eng'g, Inc. v. United States*, 805 F.2d 372, 377 (Fed.Cir.1986); *Tidewater Management Servs., Inc. v. United States*, 573 F.2d 65, 73, 216 Ct.Cl. 69 (1978); *RADVA Corp. v. United States*, 17 Cl.Ct. 812, 819 (1989), *aff'd*, 914 F.2d 271 (Fed.Cir.1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." *Tidewater Management Servs.*, 573 F.2d at 73, 216 Ct.Cl. 69 . . . .

*Lockheed Missiles & Space Co., Inc. v. Bentsen*, 4 F.3d at 958–59; *see also Grumman Data Sys. Corp. v. Dalton*, 88 F.3d at 995; *Grumman Data Sys. Corp. v. Widnall*, 15 F.3d 1044, 1046 (Fed.Cir.1994).

The wide discretion afforded contracting officers extends to a broad range of procurement functions, including the determination of what constitutes an advantage over other proposals. As stated by the United States Supreme Court:

> Particularly when we consider a purely factual question within the area of competence of an administrative agency created by Congress, and when resolution of that question depends on "engineering and scientific" considerations, we recognize the relevant agency's technical expertise and experience, and defer to its analysis unless it is without substantial basis in fact.

*Fed. Power Comm'n v. Florida Power & Light Co.*, 404 U.S. 453, 463, 92 S.Ct. 637, 30 L.Ed.2d 600, *reh'g denied*, 405 U.S. 948, 92 S.Ct. 929, 30 L.Ed.2d 819 (1972); *see also Compubahn v. United States*, 33 Fed.Cl. 677, 682–83 (1995) ("[T]his court is in no position to challenge the technical merit of

any comments made on the evaluation sheets or decisions made during the several stages of evaluation.") (footnote omitted); *Electro–Methods, Inc. v. United States*, 7 Cl.Ct. 755, 762 (1985) (Especially "where an agency's decisions are highly technical in nature ... judicial restraint is appropriate and proper.") (citations omitted). As noted above, the question is not whether the court would reach the same conclusions as the agency regarding the comparison of proposals, but rather, whether the conclusions reached by the agency lacked a reasonable basis and, thus, were arbitrary or capricious.

■ To prevail in a bid protest case, the protester also must demonstrate prejudice. *See* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error"). Expanding on the prejudice requirement, the United States Court of Appeals for the Federal Circuit has held that:

> To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. *See Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed.Cir.1996); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed.Cir.1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." *Data General*, 78 F.3d at 1562 (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." *Statistica*, 102 F.3d at 1582; *see CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1574–75 (Fed.Cir.1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, "'there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration.'") (citation omitted).

*Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed.Cir.), *reh'g denied* (1999) (citation omitted in original); *see also Galen Med. Assoc., Inc. v. United States*, 369 F.3d at 1330; *Info. Tech. & Applications Corp. v. United States*, 316 F.3d at 1319; *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed.Cir.

2002); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d at 1332–33; *OMV Med., Inc. v. United States*, 219 F.3d at 1342; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d at 1057; *Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1380 (Fed.Cir.2000). In *Data General Corporation v. Johnson*, the United States Court of Appeals for the Federal Circuit wrote:

> We think that the appropriate standard is that, to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract .... The standard reflects a reasonable balance between the importance of (1) averting unwarranted interruptions of and interferences with the procurement process and (2) ensuring that protesters who have been adversely affected by allegedly significant error in the procurement process have a forum available to vent their grievances.

*Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed.Cir.1996).

In the case currently before the court, on the price proposal submission date, plaintiff asserted to the Navy that a power outage delayed the submission of its price proposal, and inquired whether the Navy could accept the late proposal, due to the special circumstances surrounding the late submission. The plaintiff now also alleges that the Navy's rejection of its price proposal as untimely was arbitrary and capricious because, according to Conscoop, it complied with a statement that appeared on the Navy's web site, which plaintiff claims directed offerors to submit their price proposals "by 2:00 PM U.S. Time Zones." In the alternative, plaintiff argues that defendant's "affirmative direction" on the Navy's web site "instructing offerors to submit proposals by 2:00 PM U.S. Time Zones materially contributed to Conscoop's late bid." Further, plaintiff maintains that the acceptance of Conscoop's price proposal would not impair the integrity of the procurement process. The court reviews the agency's procurement decision in this case on

the basis of the administrative record submitted to the court by both parties.[6]

## I. The Deadline for the Submission of Price Proposals

■ According to the plaintiff, the Navy's rejection of its price proposal as late was arbitrary and capricious because Conscoop's price proposal was timely. Based on the Navy's web site section titled, "Description of Advertised Solicitation," which states: "Due Date: 1400 hours [2 p.m.] (U.S. Time Zones)," the plaintiff maintains that price proposals were not due until 2:00 p.m. "U.S. Time Zones." Conscoop claims that "U.S. Time Zones" refers to Eastern Standard Time (EST), "since that is where Naval and U.S. Government headquarters are located." [7] Plaintiff contends that the Navy's web site "Description of Advertised Solicitation" is a component of the solicitation. The plaintiff argues that the

> web site was the only way to access the solicitation and the website [sic] is therefore in effect the face page of the Solicitation, incorporated as a notice to offerors and becomes the essential part of the solicitation as it was the location that offerors were instructed to view and rely upon for any current changes.

The plaintiff proposes that the web site language should be given weight equal to, or greater than, the time deadline that appears in the actual solicitation. Plaintiff notes that, not only was the solicitation issued electronically via the web site, but offerors also were instructed to monitor the web site for amendments and notices. According to the plaintiff, "the WEB page referenced U.S. Time,

which supersedes any statement in the paper[8] solicitation since it would be the web information that is more current."

The solicitation, as issued, lists the deadline for price proposals as 1400 hours [2:00 p.m.], "local time," which the defendant states refers to Naples, Italy time, where the designated recipient of the price proposals was located.[9] The defendant argues that the "Description of Advertised Solicitation" on the Navy's web site is not part of the solicitation. Defendant contends that the Navy's web site "was merely a mechanism for offerors to access the solicitation, which was the binding and relevant procurement document." The information on the web site "merely constituted ancillary information provided by the Navy." Therefore, the defendant maintains that the solicitation, not the words on the Navy's web site, determines the deadline for the submission of price proposals.

The court agrees that the solicitation is the controlling document for determining the submission deadline for price proposals. Subparagraph 1.4 of the solicitation incorporates FAR 52.215–1, "Instructions to Offerors—Competitive Acquisition." Subsection (c)(3)(i) of FAR 52.215–1 states: "Offerors are responsible for submitting proposals, and any modifications or revisions, so as to reach the Government office designated in the solicitation *by the time specified in the solicitation.*" (emphasis added); *see also* 10 U.S.C. § 2305(a)(2)(B)(ii)(II) (2000) ("[A] solicitation for sealed bids or competitive proposals... shall at a minimum include ... in the case of competitive proposals ... the time and place for submission of proposals."); *California*

---

**6.** Plaintiff attempted to submit the declaration of Giuseppe Fichera, who prepared Conscoop's bid documents, as an exhibit to its opposition to defendant's motion for judgment upon the administrative record and its cross motion for judgment upon the administrative record. Defendant argues that, since the declaration is not part of the administrative record and was not considered by the agency, it should not be considered by this court. The court notes, however, that Mr. Fichera's declaration does not add to, or change, the arguments already offered by plaintiff; nor does it affect the outcome of this case. Mr. Fichera's declaration merely serves to reiterate plaintiff's arguments that Conscoop relied on the web site information regarding the price propos-

al deadline and that plaintiff's failure to meet the 2:00 p.m. Naples, Italy time deadline was the result of a power outage. These arguments are addressed below.

**7.** The court notes that 2:00 p.m. EST is 8:00 p.m. Italian time, well after the close of normal business hours.

**8.** No paper solicitation was issued in this case, as indicated in both the solicitation and the description of the solicitation on the Navy's web site.

**9.** The construction project at issue is located in Sigonella, Italy. Italy only has one time zone.

*Marine Cleaning, Inc., v. United States*, 42 Fed.Cl. 281, 296–297 (1998) ("To be considered timely, a bid must be delivered to the place specified in an IFB [Invitation for Bids] on or before the time and date specified in the IFB." (footnote omitted)); *AABLE Tank Servs., Inc.*, B–273010, 96–2 CPD ¶ 180, 1996 WL 655549, at *2 (Comp.Gen. Nov.12, 1996) ("As a general rule, the place and time for bid submission is determined by the relevant provision in the IFB itself.... [A] bid can only be timely if it is received at the office designated in the solicitation by the exact time specified for receipt."); *Educational Planning & Advice, Inc.*, B–274513, 96–2 CPD ¶ 173, 1996 WL 637078, at *2 (Comp. Gen. Nov.5, 1996) ("A bidder is responsible for delivering its bid to the proper place at the proper time; a bid is late if it does not arrive at the office designated in the solicitation by the time specified.").

The solicitation states that it will "be issued via" the web site, and that the web site is the "method of distributing" solicitation amendments and notices. This language establishes that the web site was the mechanism for offerors to access the solicitation and any amendments and notices. However, only potential amendments to a solicitation can become part of the solicitation, not a web site.

Moreover, an examination of a print-out of the information contained on the Navy's web site does not support plaintiff's argument that the web site is a component of the solicitation. The first heading on the first page of the web site is the "Description of Advertised Solicitation," which includes "Due Date" information. The next heading is "Synopsis or Description." Neither of these headings, nor any other language on the web site, indicates that the information on the web site is part of the solicitation. To the contrary, the language on the web site indicates that the solicitation is a separate document from the summary information that appears on the web site. For instance, under the "Synopsis or Description" title on the web site, the second paragraph states clearly:

"The submittal requirements are described in the solicitation." If the web site was a component part of the solicitation, such language would not have been required. The only reasonable interpretation of this referral language is that the solicitation is a separate document, which, alone, contains the submittal requirements, including the deadline for submission of price proposals.

Furthermore, the actual text of the solicitation was accessible through a link on the first page of the web site, titled "Get Solicitation Files." The record contains a print-out of the materials that were accessible from the link, "Solicitation Files." The "Description of Advertised Solicitation" on the web site, upon which Conscoop relies for deadline information, is not contained in this print-out. Moreover, the table of contents of the solicitation does not list the web site as a component part of the solicitation. Furthermore, the language of the solicitation in no way suggests that the words on the web site should be read as part of the solicitation.[10]

■ Since the language of the solicitation, not the web site, controls, the words of the solicitation must be examined to determine the deadline for the submission of price proposals. The same principles that govern the interpretation of contracts are applicable to the interpretation of solicitations. *Banknote Corp. of Am. v. United States*, 365 F.3d at 1353 n. 4 ("The principles governing interpretation of Government contracts apply with equal force to the interpretation of solicitations issued by the Government for such contracts. *See, e.g., Grumman Data Sys. v. Dalton*, 88 F.3d at 997–98."); *see also Northrop Grumman Corp. v. United States*, 50 Fed.Cl. 443, 459 (2001) ("These rules apply to interpretation disputes over language found in solicitations for government contract work as well as for executed contracts."); *Chas. H. Tompkins Co. v. United States*, 43 Fed.Cl. 716, 722 (1999) ("The guiding principles which control the interpretation of government contracts and solicitations are considered to be largely interchangeable.").

---

**10.** The court also notes that a summary "Description," or "Synopsis" is not a substitute for the full document, whether, for example, it is the headnote of a published case or the executive summary of a document.

With regard to interpreting solicitations, the United States Court of Appeals for the Federal Circuit recently has stated that:

> Interpretation of the solicitation is a question of law over which we exercise independent review. We begin with the plain language of the document. The solicitation is ambiguous only if its language is susceptible to more than one reasonable interpretation. If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning; we may not resort to extrinsic evidence to interpret them. Finally, we must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions.

*Banknote Corp. of Am. v. United States,* 365 F.3d at 1353 (citations omitted); *see also NVT Techs., Inc. v. United States,* 370 F.3d 1153, 1159 (Fed.Cir.2004) (" 'To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term. Rather, both interpretations must fall within a "zone of reasonableness." ' "); *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751 (Fed.Cir.1999); *Grumman Data Sys. Corp. v. Dalton,* 88 F.3d at 997; *A–Transport Northwest Co., Inc. v. United States,* 36 F.3d 1576, 1584 (Fed.Cir.1994); *City of Tacoma Dept. of Pub. Utils. v. United States,* 31 F.3d 1130, 1134 (Fed.Cir.1994) ("Outside evidence may not be brought in to create an ambiguity where the language is clear."); *Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1578 (Fed.Cir.1993); *Interwest Constr. v. Brown,* 29 F.3d 611, 615 (Fed.Cir.1994).

The key words in the solicitation read: "A. **Electronic transmission** of the offer to perform the work required is due at the email address specified in Section 00201 by: For technical proposals: 18 Jul 2003, **1400** (*hours*) For price proposals: 5 Aug. 2003, **1400** (*hours*) The hours are stated in local time." (emphasis in original). The parties disagree as to the meaning of the words, "local time." The defendant contends that "local time" refers to Naples, Italy time. The plaintiff bases its interpretation of "local time" on the information on the web site, which includes the words, "U.S. Time Zones." Specifically, the plaintiff reads "U.S. Time Zones" on the web site, together with the words, "local time," in the solicitation, to mean United States Eastern Standard Time, since "that is where Naval and U.S. Government headquarters are located."

Block 7 of the solicitation indicates that it was issued by the "Department of the Navy Engineering Field Activity Mediterranean ... Napoli." In other words, the office that issued the solicitation is located in Naples, Italy. Although the solicitation was only available electronically, the solicitation states that offers could be submitted through the mail or electronically. Block 8 of the solicitation directs that offers sent via express mail should be addressed to a Naples, Italy address: "US Navy Supply Department GSA Customs ... Napoli." Block 13 of the solicitation states that "[e]lectronic transmission of the offer to perform the work required is due at the email address specified in Section 00201." Section 00201 indicates that price proposals should be submitted electronically to: *"kaimikauaje@efamed.navfac.navy.mil,"* the e-mail address of Joan Kaimikaua, the contract specialist for this particular procurement, who also is listed as the contact person on the solicitation. Ms. Kaimikaua's office is located in Naples, Italy. The project at issue is located in Sigonella, Italy, which is in the same time zone as Naples, Italy. In short, as defendant argues, "every location with a nexus to this procurement is located in the same time zone," which indicates that the solicitation's reference to "localtime" refers to the time in Naples, Italy.

In addition, the language in subparagraph 1.4 of the solicitation, which is included in the section titled, "Instructions to Offerors," and mirrors FAR 52.215–1(c)(3)(i), indicates that "local time" generally refers to the time where the "Government office designated in the solicitation" is located. The provision reads:

> (i) Offerors are responsible for submitting proposals, and any modifications, or revisions, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. If no time is specified in the solicitation, the time for

receipt is 4:30 p.m., local time, for the designated Government office on the date that proposal or revision is due.

FAR 52.215–1(c)(3)(i). This FAR provision also supports the conclusion that "local time," as referenced in the solicitation, refers to the time in Naples, Italy. The plaintiff's allegation, that "since that is where Naval and U.S. Government headquarters are located," the proposals were due by 2:00 p.m. Eastern Standard Time, is not based on the language of the solicitation. The "Government office designated in the solicitation" as the recipient of price proposals is located in Naples, Italy. FAR 52.215–1(c)(3)(i).

Moreover, even if, as plaintiff argues, the web site should be employed as extrinsic evidence to aid in the interpretation of the solicitation, the plaintiff's interpretation would still fail. First, "U.S. Time Zones" does not necessarily refer to Eastern Standard Time, since the United States has multiple time zones. Therefore, as defendant argues, this phrase would fail to establish an actual deadline for the submission of price proposals. Second, only a tenuous nexus exists between this procurement and any location in a United States time zone. Third, a deadline of 2:00 p.m. EST would have been 8:00 p.m. in Naples, Italy, which is after the traditional close of business in the office to which proposals were to be submitted. Plaintiff's interpretation does not comport with normal business practice, or commonsense, since offers usually are not due at a time when the receiving office is officially closed. In sum, the plain and unambiguous language of the solicitation demonstrates that the only reasonable interpretation of the term, "local time," in the context of all the provisions of the solicitation as a whole, is that the phrase refers to the time in Italy, where the offices issuing the solicitation and receiving proposals, as well as the project site, were located.[11]

This conclusion also is supported by the fact that all the other bidders in this case successfully submitted their price proposals by the 2:00 p.m. Naples, Italy time deadline contemplated by the solicitation. See Community Heating & Plumbing Co., Inc. v. Kelso, 987 F.2d at 1579 (evidence of other bidders' interpretations considered in determining reasonableness of contractor's interpretation); Centro Management, Inc., B–287107, 2001 CPD ¶ 52, 2001 WL 238561, at *2 n. 3 (Comp.Gen. Mar.9, 2001) ("It is significant, in this regard, that 8 of the 10 offers were received by January 16, indicating that all but 2 firms apparently found the correct due date clear.").

Finally, the court notes, for the sake of argument only, that if the web site had been found to be part of the solicitation, which the court has not found, a patent ambiguity would have resulted, since the solicitation and the words on the web site would have referred to two different time deadlines for the submission of price proposals.[12] Recently, the United States Court of Appeals for the Federal Circuit stated that:

An ambiguity will only be construed against the government if it was not obvious on the face of the solicitation and reliance is shown. If the ambiguity is patent, it triggers a duty to inquire. A patent ambiguity is one that is "obvious,

---

**11.** See also Captain Hook Trading Co., in which "local time" referred to the time zone in which the entity issuing the solicitation and receiving proposals was located. Captain Hook Trading Co., B–224013, 86–2 CPD ¶ 566, 1986 WL 64379, at *2 (Comp.Gen. Nov.17, 1986) ("Best and final offers were due by 12 p.m. 'local' time on August 14. Since the issuing entity was the Washington, D.C., MSC office, to which the RFP required that proposals be delivered, 'local' time clearly refers to time in Washington, D.C.").

**12.** Conscoop maintains that, subsequent to its protest, the Navy took "corrective action" by issuing amendments to other unrelated solicitations, stating that the time zones listed on the Navy's web site are default time zones and

should be ignored. Conscoop argues that this fact evidences that the Navy concluded that the "U.S. Time Zones" reference on the web site is "misleading." The mere fact the government issued such amendments, however, does not permit Conscoop to ignore the solicitation in this case. See Martin Lane Co. v. United States, 193 Ct.Cl. 203, 218, 432 F.2d 1013, 1021 (1970) ("Finally, clarification in a subsequent procurement of language which has theretofore given rise to disagreement is only wise. The clarification cannot serve to forgive an unreasonable interpretation of the earlier language, nor properly be regarded as an admission that it was in fact ambiguous.").

gross, [or] glaring, so that plaintiff contractor had a duty to inquire about it at the start." If an ambiguity is obvious and a bidder fails to inquire with regard to the provision, his interpretation will fail.

*NVT Technologies, Inc. v. United States*, 370 F.3d at 1162 (citations omitted); *see also Grumman Data Systems Corp. v. Dalton*, 88 F.3d at 998 ("If a solicitation contains contract language that is patently ambiguous, a protestor cannot argue, before the Board or before this court, that its interpretation is proper unless the protestor sought clarification of the language from the agency before the end of the procurement process."); *The Haskell Co.*, B–292756, 2003 CPD ¶ 202, 2003 WL 22740610, at *3, 2003 U.S. Comp. Gen. LEXIS 196, at *7–8 (Nov. 19, 2003) ("To the extent that is viewed as an ambiguity in the solicitation, it was one that was obvious from the face of the RFP, and we have repeatedly held that an offeror who chooses to compete under a patently ambiguous solicitation does so at its peril and cannot later complain when the agency proceeds in a manner inconsistent with one of the possible interpretations.").

There is no evidence in the record before the court indicating that plaintiff sought clarification of the time deadline before the price proposals were due.[13] Therefore, even if this court had found, which it does not, that the web site is a constituent element of the solici-

tation, the plaintiff still would not prevail. In fact, as is discussed more fully below, the record demonstrates that Conscoop did not need to inquire because it was not confused by the time zone discrepancy. Conscoop was aware of the correct time deadline for price proposals, and attempted, but failed, to comply with the Italian time deadline, arguing that a power failure prevented compliance. The court finds that the solicitation language controls the deadline for the submission of price proposals in this case, which was 2:00 p.m. Italian time on August 5, 2003.

## II. Government Caused Delay

■ An alternative argument offered by the plaintiff is that, if the court finds that the deadline for the submission of price proposals was 2:00 p.m. Naples time, the proposal "was late due to a government caused delay and therefore should be accepted." Specifically, plaintiff maintains that the Navy's "affirmative direction" on its web site "instructing offerors to submit proposals by 2:00 PM U.S. Time Zones materially contributed to Conscoop's late bid." Plaintiff also argues that the integrity of the procurement process will remain intact if the price proposal is accepted.

Plaintiff cites a line of GAO cases in support. As defendant notes, however, the present case can be distinguished from those

---

13. Plaintiff tries to rely on a non-precedential GAO case, *Palomar Grading & Paving, Inc*, B–274885, 97–1 CPD ¶ 16, 1997 WL 8497, at *1 (Comp.Gen. Jan.10, 1997). The protestor in *Palomar* questioned the awardee's reliance on the incorrect zip code, which appeared on the cover sheet of the solicitation and in amendment No. 0001 to the solicitation, because the correct zip code appeared elsewhere in the solicitation. *Id.* The GAO found that the awardee reasonably relied on the incorrect address specified in the solicitation: "[I]n our view, the discrepancy in the zip codes was not sufficiently apparent that [the awardee] should have been on notice of a possible mistake in the address specified in the solicitation for delivery of bids." *Palomar Grading & Paving, Inc.*, 1997 WL 8497, at *3; *see also Select, Inc.*, B–245820.2, 92–1 CPD ¶ 22, 1992 WL 5028, at *3 (Comp.Gen. Jan.3, 1992). By contrast, Conscoop did not reasonably rely on the deadline information on the web site because it is not part of the solicitation. Moreover, if Conscoop believed the web site deadline information was controlling, plaintiff had a duty to clarify and inquire, which it failed to fulfill.

In *AABLE Tank Services, Inc.*, after receiving the solicitation, the lowest bidder noted that the solicitation required bidders to send proposals to a location that was different from the issuing location, which also was listed in the solicitation. *AABLE Tank Services, Inc.*, 1996 WL 655549, at *1, *2. In light of this discrepancy, the bidder contacted the contract specialist listed on the solicitation in order to verify the location to which the bid was to be mailed. *Id.* The lowest bidder's late bid resulted from its attempt to fulfilll its duty to inquire when faced with a potential ambiguity in the solicitation. As the GAO stated in *AABLE*, "one of the fundamental principles underlying the rules for the consideration of late bids is that a bidder who has done all it could and should to fulfill its responsibility should not suffer if the bid did not arrive as required because the government failed in its own responsibility, if otherwise consistent with the integrity of the competitive system." *Id.* at *3.

cited by plaintiff because in the GAO cases, actions by the government, reasonably relied on by the offeror, were found to be "the paramount cause" of the late bid. *See Weeks Marine, Inc.*, B–292758, 2003 CPD ¶ 183, 2003 WL 22383046, at *4 (Comp.Gen. Oct.16, 2003) ("we have found late bids acceptable where the government's affirmative misdirection—such as erroneous solicitation instructions—was the paramount cause of a bidder's untimely delivery of its bid since an agency has an affirmative duty to establish procedures for the timely receipt of bids.... In this case, the IFB listed the wrong room for delivery of bids.... As a consequence, the misdirection by the agency was the paramount cause of Great Lakes' untimely submission of its bid."); *Brazos Roofing, Inc.*, B–275113, 97–1 CPD ¶ 43, 1997 WL 26506, at *2 (Comp.Gen. Jan.23, 1997) (In light of inoperable government equipment to receive the bid, the GAO stated: "[A]s a general principle, where a bidder has done all that it could and should to ensure the timely delivery of its bid, it should not suffer if the government fails in its own responsibilities, provided that acceptance of the bid does not compromise the integrity of the competitive bidding process."); *AABLE Tank Servs., Inc.*, 1996 WL 655549, at *3–4 ("[T]he government was the paramount cause of the 'late' receipt of ECI's hand-carried bid. We have permitted late hand-carried bids to be considered where the bidder's reasonable reliance on improper delivery instructions by knowledgeable government personnel made it impossible for the bid to be timely delivered to the bid opening location."); *Select, Inc.*, 1992 WL 5028, at *3 ("Accordingly, where, as here, affirmative government misdirection—such as erroneous solicitation instructions [incorrect city address for hand delivered bids]—clearly delay a bid's timely submission, the bid should not be rejected unless the bidder has significantly contributed to the government's late receipt by not acting reasonably in fulfilling its

responsibility of delivering a hand-carried bid to the proper place by the proper time."); *see also Integrated Support Sys. Inc.*, B–283137.2, 99–2 CPD ¶ 51, 1999 WL 709481, at *1, 1999 U.S. Comp. Gen. LEXIS 155, at *4 (Sept. 10, 1999) ("[A] hand-carried proposal that arrives late may be considered if improper government action was the paramount cause for the late submission, and where consideration of the proposal would not compromise the integrity of the competitive process. Improper government action in this context is affirmative action that makes it impossible for the offeror to deliver the proposal on time.").

For a protestor to prevail, (in addition to demonstrating that the government was the paramount cause of the delayed bids,) the protestor must establish reasonable reliance on the incorrect information. The United States Court of Appeals for the Federal Circuit has stated:

> The general rule is that "where a contractor seeks recovery based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid." This rule of law is well settled. The burden of proving reliance on the claimed interpretation thus falls on the contractor.

*Fruin–Colnon Corp. v. United States*, 912 F.2d 1426, 1430 (Fed.Cir.1990) (citations omitted); *see also NVT Techs., Inc. v. United States*, 370 F.3d at 1162 ("An ambiguity will only be construed against the government if it was not obvious on the face of the solicitation and reliance is shown."); *T. Brown Constructors, Inc. v. Pena*, 132 F.3d 724, 735 (Fed.Cir.1997) ("In order for Brown to prevail on its claim it must have relied on its interpretation when bidding the contract."), *reh'g denied* (1998).

In the case currently before the court, Conscoop's late price proposal cannot be attributed to improper government action.[14]

---

14. In its complaint, Conscoop also suggests that Navy personnel had to perform certain actions to access Conscoop's price proposal, and that the Navy may have been unable to perform these actions efficiently, which delayed the Navy's access to Conscoop's proposal. The record does not indicate that Conscoop's late price proposal resulted from the Navy's inability or failure to

perform tasks necessary to gain access to the proposal. Similarly, Conscoop argues that "[i]t was possible that" the Navy did not receive Conscoop's price proposal because of a "malfunction ... with the Agency's equipment." The record indicates, however, that the Navy's e-mail system in Naples, Italy, where Ms. Kaimikaua

Unlike its competitors, in the case before this court, Conscoop now argues that it elected to rely on the web site information, rather than on the controlling words in the solicitation, for the submission deadline of price proposals. The record in this case, however, demonstrates that at the time of price proposal submission, the plaintiff actually did not rely on the time zone designation on the web site. Conscoop did not believe that the deadline for the submission of its price proposal was 2:00 p.m. "U.S. Time Zones," or 8:00 p.m. Naples, Italy time. To the contrary, the record indicates that Conscoop was aware that the deadline for price proposal submission was 2:00 p.m. Italian time, and plaintiff attempted to comply with that deadline.

The record demonstrates that, subsequent to Ms. Kaimikaua's August 5, 2003, 2:28 p.m. e-mail message requesting Conscoop to verify that it had not submitted a price proposal, a Conscoop representative, Vera Amante, telephoned Ms. Kaimikaua and immediately alleged a power failure as the reason for its admittedly tardy price proposal submission. The following day, on August 6, 2003, Ms. Kaimikaua recorded the substance of her telephone conversation with the Conscoop representative in a memorandum, which appears in the record, as follows:

After that email was sent, a phone call was received from a CONSCOOP representative who identified herself as "Vera." Vera was not aware of the encl (1) email, and explained that there had been a power outage "on base" and therefore they were not able to submit the price proposal by the designated hour. She further inquired about making an exception for them, due to the circumstances. I explained to her that according to the clause that is in the solicitation, we cannot consider such a late proposal. Vera was clearly upset in hearing this information and communicated

that the company would be very disappointed when she conveyed to them what I was saying. Vera asked if they should submit the proposal anyway. I stated that if a proposal is received and considered to be late by the Government, it would not be evaluated, though I could not prevent anyone from sending me something.

In addition, in her declaration submitted to the court, Ms. Kaimikaua stated that later in the day on August 5, 2003, she listened to her phone messages and found one that had been left by a woman from Conscoop, who sounded like Ms. Amante, but she was not certain, since no name was given in the message. Ms. Kaimikaua stated that she did not delete the message, and it was saved automatically. Upon learning of Conscoop's protest before the GAO on August 15, 2003, Ms. Kaimikaua prepared a verbatim transcription of the telephone message, which reads as follows:

Hello this is CONSCOOP we had a problem because ... regarding contract Main Gate improvements which is number 1056. We should send the documents by two o'clock but here on base we had a power black out so we just send it now, which is half past two. We hope this is not a problem anyway I will call again see if this is a problem. We hope it doesn't represent any problem to you and to us. Thank you, bye.[15]

As demonstrated by these excerpts from the record, Conscoop's representative did not assert contemporaneously that Conscoop's proposal was timely submitted because plaintiff believed the deadline for the submission of price proposals was 2:00 p.m. in a U.S. Time Zone, instead of 2:00 p.m. Italian time. To the contrary, the Conscoop representative acknowledged that the proposal was late. Indeed, in the phone message transcribed by Ms. Kaimikaua, the Conscoop representative conceded that the company was attempting

was located, was fully functional on the date Conscoop's price proposal was due.

**15.** In its motion for a preliminary injunction, Conscoop argues that this transcription is unreliable evidence. As defendant argues, however, Conscoop has failed to proffer evidence demonstrating that the transcription in the record is unreliable or inaccurate. Moreover, Mary Langfeldt, the contracting officer, stated in a declara-

tion in the administrative record that Ms. Kaimikaua played the phone message for her and her recollection of the content of the phone message, as stated in her declaration, is consistent with Ms. Kaimikaua's transcription. In addition, the information in the message is consistent with other documentary evidence in the record, which is not contested by the plaintiff.

to send the proposal by 2:00 p.m. Italian time. Further, the Conscoop representative identified an alleged power outage as the cause of the admittedly late proposal.

Moreover, the evidence in the record demonstrates that Conscoop sent its proposal at 1:58 p.m. Naples, Italy time, which indicates that plaintiff was attempting to comply with the 2:00 p.m. Naples, Italy time deadline, rather than a purported 2:00 p.m "U.S. Time Zones" deadline, which would have been 8:00 p.m. Italian time. In addition, after receiving notification that its price proposal was late and would not be considered, Conscoop, via counsel, sent two letters to the Navy arguing that the Navy should consider its price proposal, despite its late arrival, in light of the alleged power outage.

In short, the evidence in the record establishes that Conscoop knew that its price proposal was due by 2:00 p.m. Naples, Italy time. Conscoop's argument, that based on the web site information, it determined that the deadline was 2:00 p.m. "U.S. Time Zones," or 8:00 p.m. Italian time, appears to be a *post hoc* rationalization, since it is inconsistent with the contemporaneous evidence. The record indicates that Conscoop did not, in fact, rely on the web site information and, therefore, was not misled by the "U.S. Time Zones" reference on the web site.

### III. Acceptance of a Late Proposal

Plaintiff offers alternative arguments that, even if Conscoop's price proposal was received after the 2:00 p.m. Italian time deadline, the Navy was permitted to accept the late proposal due to the circumstances surrounding the late submission and that the Navy's decision not to do so was arbitrary and capricious. Plaintiff maintains that, even if the court determines that the Navy did not contribute to the lateness of plaintiff's price proposal, the Navy "was still required to use its discretion in determining whether or not to accept the late bid." According to the plaintiff:

> [I]f the Navy received the proposal after 2:00 PM [Italian time], it was still sent at 1:58 PM [Italian time] .... Therefore, the integrity of the procurement process would not be affected by accepting a bid that was

sent in accordance with the Solicitation requirements, but arrived in electronic form after 2:00 PM [Italian time]. Conscoop's proposal did not arrive until after 2:00 PM [Italian time] due to a debilitating power failure in Southern Italy which did not end until after 2:00 PM [Italian time].

The defendant responds that, as concluded by agency personnel, the Navy was required by the FAR to reject Conscoop's price proposal because it was late, and none of the exceptions in the FAR applied. Therefore, the defendant maintains that the Navy's decision to reject Conscoop's price proposal was not arbitrary and capricious because, "when an agency complies with a course of action mandated by law, its actions are per se reasonable, non-arbitrary, and non-capricious."

The solicitation in this case included the contract clause at FAR 52.215–1, "Instructions to Offerors—Competitive Acquisition (May 2001)." FAR 52.215–1(c)(3)(i) states:

> (i) Offerors are responsible for submitting proposals, and any modifications or revisions, so as to reach the Government office designated in the solicitation by the time specified in the solicitation....

48 C.F.R. § 52.215–1(c)(3)(i).

■ The requirement that proposals be submitted on time is a "strict rule, with very limited exceptions ...." John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of Government Contracts* 786 (3d ed.1998); *see also* FAR 15.208(a). The "protestor bears the burden of proving by a preponderance of the evidence that its bid was timely submitted." *California Marine Cleaning, Inc., v. United States,* 42 Fed.Cl. at 297; *see also The Haskell Co.,* 2003 WL 22740610, at *2, 2003 U.S. Comp. Gen. LEXIS 196, at *5 ("It is the responsibility of an offeror to deliver its proposal to the proper place at the proper time, and late delivery generally requires that a proposal be rejected."); *S.W. Elec. & Mfg. Corp.,* B–249308, 92–2 CPD ¶ 320, 1992 WL 328740, at *2 (Comp.Gen. Nov.3, 1992) ("The regulations place the burden on offerors to see that offers and any modifications to them reach the designated government office on time. In particular, contractors using facsimi-

le transmission to file documents assume the risk of nonreceipt." (citation omitted)).

The rule does not vary depending on the method of delivery, whether by hand or electronically. Contractors who physically arrive at the door with their submissions after the designated time to submit proposals similarly have been denied entrance and their proposals have been rejected as late. *See Ironhorse Ltd.*, B–256582, 94–1 CPD ¶ 176, 1994 WL 74001, at *1, 1994 U.S. Comp. Gen. LEXIS 170, at *2 (Mar. 4, 1994) ("[T]he severe weather that Ironhorse asserts was responsible for the late submission of its bid is not a reason that would permit the acceptance of its late bid."); *B.E.C. Med. Prods.*, B–256483, 94–1 CPD ¶ 159, 1994 WL 74450, at *1, 1994 U.S. Comp. Gen. LEXIS 214, at *3 (Feb. 28, 1994) ("[T]he severe weather that B.E.C. asserts was responsible for the late submission of its bid samples is not a reason that would permit the acceptance of its sample."); *Orange Shipbuilding Co.*, B–230285, 88–1 CPD ¶ 246, 1988 WL 227899, at *1, 1988 U.S. Comp. Gen. LEXIS 261, at *1 (Mar. 9, 1988) ("A late hand-carried bid may not be accepted because the lateness was due to inclement weather beyond the control of the bidder."); *University of Kansas*, B–222329, 86–1 CPD ¶ 369, 1986 WL 63343, at *1, (Comp.Gen. Apr.15, 1986) ("A proposal hand-delivered after the time specified for receipt must be rejected as late, even though the cause of the delay, bad weather and congested air traffic, was beyond the offeror's control."); *The Glyn Group, Inc.*, B–213917, 84–1 CPD ¶ 50, 1984 WL 43699, at *1 (Comp.Gen. Jan.3, 1984) (A late hand-delivered proposal was properly rejected even though delay was caused by unusually severe weather, since consideration of late proposals may be permitted only in the exact circumstances provided for in the solicitation); *Nikon, Inc.*, B–211047, 83–1 CPD ¶ 345, 1983 WL 26657, at *2 (Comp.Gen. Apr.1, 1983) (A bid received late due to adverse weather conditions was properly rejected); *MTS Sys. Corp.*, B–200590, 80–2 CPD ¶ 431, 1980 WL 14520, at *1 (Comp.Gen. Dec.15, 1980) (A protestor's argument that its proposal should have been considered because it was delayed due to unexpected, adverse weather conditions was rejected); *Unitron Eng'g Co.*, B–

194707, 58 Comp. Gen. 748, 750, 1979 WL 15026 (1979) ("Where hand-carried bid was received one day after bid opening because common carrier closed its offices during emergency at nearby nuclear electric power generating plant, contracting officer properly rejected bid as late.").

■ There also is GAO precedent, with which this court agrees, stating that the offeror assumes the risk of an untimely delivery when it fails to allow sufficient time to submit its proposal before the deadline. *See Integrated Support Sys. Inc.*, 1999 WL 709481, at *1, 1999 U.S. Comp. Gen. LEXIS 155, at *5 ("The protestor significantly contributed to the late receipt of its proposal by failing to allow sufficient time to hand-deliver its proposal."); *Adirondack Constr. Co.*, B–280015.2, 98–2 CPD ¶ 55, 1998 WL 540030, at *3, 1998 U.S. Comp. Gen. LEXIS 288, at *7–8 (Aug. 25, 1998) ("If the bidder significantly contributed to the late receipt by not acting reasonably in fulfilling its responsibility for ensuring delivery to the designated place for receipt by the proper time, the late bid should generally not be accepted. In particular, a bidder significantly contributed to the late delivery if it failed to allow enough time to permit a timely submission." (citations omitted)). In the context of electronic submissions, the GAO has found that:

> We view it as an offeror's responsibility, when transmitting its proposal electronically, to ensure the proposal's timely delivery by transmitting the proposal sufficiently in advance of the time set for receipt of proposals to allow for timely receipt by the agency.

\* \* \* \* \* \*

Here, we find that PMT did not act reasonably in waiting to transmit its electronic proposal until 13 minutes before the time set for receipt of proposals. It is true that neither party has been able to demonstrate exactly why PMT's submission was not saved in IIPS [the agency's Industry Interactive Procurement System web-site] prior to closing time, and it is possible that some error occurred in the system. Nevertheless, as the protestor itself recognizes, "Occasional errors in computer sys-

tems are a fact of life." We think an offeror accepts the risk of late receipt and rejection of a proposal where it delays transmitting its proposal until the last few minutes before the time set for receipt of proposals.

*PMTech. Inc.*, B–291082, 2002 CPD ¶ 172, 2002 WL 31303100, at \*3, 2002 U.S. Comp. Gen. LEXIS 159, at \*6–7, \*9–10 (Oct. 11, 2002).

Conscoop could have sent its price proposal earlier, but it chose to assume the risk of late delivery by sending its price proposal just two minutes prior to the deadline established in the solicitation. While the use of the internet in government procurement results in greater economies and convenience for all parties, increased reliance on this medium also may generate a new genre of mechanical problems and legal issues. Although the use of the internet may allow contractors more time within which to prepare their proposals prior to submission, this perceived advantage may create a false sense of security, resulting in problems for those contractors who elect to cut it close, and allow insufficient time for transmission to achieve receipt at the designated location in a timely fashion, as evidenced by this case.

The controlling time is not when the proposal was sent, but when it was received at the government office, in this case, the e-mail address identified in the solicitation for receipt of proposals. *See California Marine Cleaning, Inc. v. United States*, 42 Fed.Cl. at 297 ("Whether a bid is timely or late is thus determined by when it is received at the designated office, not when it is discovered by the agency, or when it is opened by agency personnel." (emphasis in original)); *The Haskell Co.* 2003 WL 22740610, at \*3, 2003 U.S. Comp. Gen. LEXIS 196, at \*6–7 ("[B]ids received in the office designated in an invitation for bids after the exact time set for opening are late bids.").

The evidence in the record, including the internet header, which tracked the "route" of the e-mail sent from plaintiff to Ms. Kaimikaua, indicates that the e-mail was sent at 1:58 p.m. Naples, Italy time.[16] The record also indicates that the e-mail was received at the Navy's server at 3:40 p.m. Italian time and that the e-mail was received in Ms. Kaimikaua's e-mail inbox at 3:41 p.m. Italian time, more than an hour and a half after the deadline. During oral argument, when asked, plaintiff's counsel did not dispute the assertion that Conscoop's price proposal was not received at the designated e-mail address by the 2:00 p.m. Italian time deadline. Therefore, although the record indicates that Conscoop's price proposal was sent before the 2:00 p.m. Italian time deadline, the record also establishes that the message did not reach the designated government office by that deadline.

As defendant argues, the Navy was required to reject Conscoop's price proposal as untimely, unless one of the exceptions for acceptance of late proposals listed in FAR 52.215–1(c)(3) applies. *See also California Marine Cleaning, Inc. v. United States*, 42 Fed.Cl. at 297 ("Even if a bid is determined by an agency to be late, however, the agency may still be able to consider the late bid under the late bid rule, which provides a number of exceptions to the general rule that only bids that are timely received by the procuring agency may be considered for award."); *Integrated Business Solutions, Inc.*, B–292239, 2003 CPD ¶ 122, 2003 WL 21659403, at \*2 (Comp.Gen. Jul.9, 2003) ("Proposals received after the exact time specified for receipt of proposals are late and will not be considered by the government unless the exceptions outlined in FAR § 15.208(b)(1) [which mirror the exceptions in FAR 52.215–1(c)(3) at issue in the instant case] apply.").

The exceptions permitting the acceptance of late proposals, which give the contracting officer discretion to evaluate and determine

---

**16.** The defendant suggests that the plaintiff has not proven that the electronic mail message transmitting its price proposal to the Navy was sent at precisely 1:58 p.m. because the plaintiff has not established that the clock in plaintiff's computer, which transmitted the message, was perfectly accurate. The time the e-mail was sent, however, is not crucial to resolution of this case, since the time of receipt of the price proposal at the government office is the critical time for determining whether a proposal is late.

whether or not a late offeror fits within one of the exceptions, are detailed in subparagraph FAR 52.215–1(c)(3)(ii)(A), as follows:

Any proposal, modification, or revision[,] received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered unless it is received before award is made, the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition; and—

(1) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of proposals; or

(2) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers; or

(3) It is the only proposal received.

48 C.F.R. § 52.215–1(c)(3)(ii)(A)(1)—(3).

The first exception listed above specifically applies to the electronic transmission of proposals. That exception cannot be invoked in this case because Conscoop's price proposal was not "received at the initial point of entry to the Government infrastructure" by 5:00 p.m. on August 4, 2003, "one working day prior to the date specified for receipt of proposals." FAR 52.215–1(c)(3)(ii)(A)(1). As previously established, Conscoop's price proposal was received on August 5, 2003 at 3:41 p.m. Italian time.

■ The second exception, FAR 52.215–1(c)(3)(ii)(A)(2), states that the proposal can be considered if "[t]here is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers." FAR 52.215–1(c)(3)(ii)(A)(2); *see also California Marine Cleaning, Inc., v. United States*, 42 Fed.Cl. at 298 (explaining that this exception "is applied to determine whether a late bid (which by definition, was not received at the designated office prior to bid opening) was received at the government installation prior to bid opening, i.e. any where on the government installation other than the designated office."). Subparagraph FAR 52.215–1(c)(3)(iii) indicates that: "Acceptable evidence to establish the time of receipt at the Government installation includes the time/date stamp of that installation on the proposal wrapper, other documentary evidence of receipt maintained by the installation, or oral testimony or statements of Government personnel."

■ In its complaint and motion for a preliminary injunction, plaintiff argues that the Navy should have considered its price proposal because the proposal was in the government's control by 2:00 p.m. Naples, Italy time: "Conscoop maintains that it sent its e-mail at 1:58 and that the government should have received it immediately thereafter ...." The defendant argues that this second exception, at FAR 52.215–1(c)(3)(ii)(A)(2), does not apply to proposals submitted electronically; rather, electronic submissions are governed by the first exception, FAR 52.215–1(c)(3)(ii)(A)(1).

The court agrees with the GAO, which has written:

While the second exception may be broad enough to encompass situations involving electronic commerce delivery methods, we do not read the regulation as providing two alternative means for determining whether a late electronically transmitted proposal may be accepted. The first exception applies, by its express terms, to situations where a proposal has been submitted by an electronic commerce method, and unqualifiedly permits such a late proposal to be considered for award only if it was received at the initial point of entry to the government infrastructure no later than 5:00 p.m. the preceding work day. Although not expressly stated in the regulation, we think the second exception necessarily applies only to proposals delivered by other than electronic means. This is so because, under the protester's alternative interpretation, late electronically transmitted proposals could be considered for award under the second exception whether

or not they were received at the initial point of entry by the preceding working day; this would essentially render the first exception a nullity. Since the first exception expressly applies to electronically transmitted proposals, there is no reason to assume that such a result was intended. Moreover, such an interpretation would be inconsistent with the fundamental principle that statutes and regulations must be read and interpreted as a whole, thereby giving effect to all provisions.

*Sea Box, Inc.,* B–291056, 2002 CPD ¶ 181, 2002 WL 31445297, at *2 (Comp.Gen. Oct.31, 2002).

Moreover, even if the second exception did apply to electronically submitted proposals, the evidence does not indicate that Conscoop's price proposal "was received at the Government installation" and "was under the Government's control" prior to 2:00 p.m. Naples, Italy time. FAR 52.215–1(c)(3)(ii)(A)(2). To the contrary, the evidence demonstrates that, although sent at 1:58 p.m. Italian time, Conscoop's price proposal did not arrive at the Navy's server until 3:40 p.m. Italian time, on August 5, 2003.

The third exception, at subparagraph FAR 52.215–1(c)(3)(ii)(A)(3), also does not apply to this case because Conscoop's price proposal was not "the only proposal received." As noted above, six other proposals were received by the government at the location, and prior to the time, identified in the solicitation.

Conscoop also argues that its price proposal should be considered by the Navy pursuant to FAR 52.215–1(c)(3)(ii)(B), which states: "However, a late modification of an otherwise successful proposal that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted." Plaintiff maintains that: "Conscoop already submitted its technical proposal which was accepted and evaluated .... Its price proposal was submitted later and should be viewed as a modification of an otherwise acceptable offer that makes the offer more favorable to the Agency." Plaintiff cites *Integrated Business Solutions, Inc.* in support of its position, however, that opinion actually undermines plaintiff's

argument. In *Integrated Business Solutions, Inc.,* the GAO explained: "The term 'otherwise successful' means the government may accept a late modification from an offeror who is *already in line for award.*" *Integrated Bus. Solutions, Inc.,* 2003 WL 21659403, at *2 (emphasis added); *see also Condec Corp. v. United States,* 177 Ct.Cl. 958, 969, 369 F.2d 753, 759 (1966) ("The manifest reason for this provision is that consideration of an already low bidder's late reduction of his bid price is in the financial interest of the government and does not prejudice the rights of other bidders, since the low bidder would be entitled to the award in any event."); *Dubinsky v. United States,* 43 Fed.Cl. 243, 261 n. 47 (1999) ("Accordingly, the GAO and courts have permitted agencies to conduct discussions solely with the putative awardee to negotiate a reduction in contract price, provided that the source selection decision was made on the basis of the price submitted in the successful offeror's BAFO."), *appeal dismissed,* 215 F.3d 1350 (Fed.Cir.1999) (table).

Plaintiff Conscoop was not "already in line for award." *Integrated Bus. Solutions, Inc.,* 2003 WL 21659403, at *2. Conscoop had not submitted an "otherwise successful proposal." FAR 52.215–1(c)(3)(ii)(B). To the contrary, at the time the plaintiff's price proposal was submitted, only plaintiff's technical proposal had been received by the Navy and, therefore, the terms of Conscoop's offer were incomplete. Price proposals and technical proposals address separate issues. A price proposal does not modify a technical proposal, but completes an otherwise incomplete offer. Conscoop's price proposal, submitted on August 5, 2003, was its first price offer. Therefore, Conscoop's price proposal did not modify prices that Conscoop had already submitted to the government, nor make the terms of a completed offer more favorable to the government.

Plaintiff also argues that the Navy should have considered its price proposal, even if it was untimely, pursuant to FAR 52.215–1(c)(3)(iv):

If an emergency or unanticipated event interrupts normal Government processes

so that proposals cannot be received at the office designated for receipt of proposals by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation, the time specified for receipt of proposals will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

48 C.F.R. § 52.215–1(c)(3)(iv). Based on this provision, plaintiff argues that,

[s]ince Conscoop's pricing proposal was delayed due to an unforeseen power failure which caused a "black out" of the entire area, the Solicitation mandates that the bid should be accepted. The power failure is clearly an unanticipated event which limited the governments [sic] ability to receive Conscoop's pricing proposal in a timely manner.

Plaintiff misreads the language of subparagraph FAR 52.215–1(c)(3)(iv). While plaintiff is correct that FAR 52.215–1(c)(3)(iv) "does not necessarily require that the emergency or event have occurred at the government facility[,]" it does require that the emergency interrupt normal Government processes. In other words, the FAR provision focuses upon whether unforeseen events prevent the government from receiving proposals at the site designated, not on whether unforeseen events prevent the offeror from transmitting its proposal. *See Educational Planning & Advice, Inc.,* 1996 WL 637078, at *1 ("[A] bid opening may be postponed when emergency or unanticipated events interrupt normal governmental processes so that the conduct of bid opening as scheduled is impracticable. Here, the unanticipated events did not interrupt normal government processes. At least four bidders responded to the IFB in a timely manner, and the Army was able to proceed with bid opening. Consequently, the refusal to delay bid opening is unobjectionable."); *Unitron Eng'g Co.,* 58 Comp. Gen. at 750 ("Contracting officers do have authority to delay bid openings when unanticipated events ... cause interruption of 'normal governmental processes so that the conduct of bid openings as scheduled is impracticable.' The contracting officer reports, however,

that mail deliveries were normal ... the agency's normal workday was not affected. The contracting officer further advises that five bids were received and that it appears adequate competition was obtained. Under these circumstances, we do not believe that Unitron's bid should be treated any differently from a bid which is delivered late because of some other extraordinary and unforeseen circumstance such as a blizzard."). The record in the case before this court indicates that the Navy's electronic mail system was fully functional throughout the day on August 5, 2003, as evidenced by the Navy's receipt of five timely price proposals that same day at the electronic mail address specified in the solicitation. Plaintiff is incorrect that, under the facts presented, FAR 52.215–1(c)(3)(iv) mandates the acceptance of Conscoop's late proposal.

Conscoop also argues that GAO case law recognizes that the government possesses discretion to postpone bid opening if "an important segment of bidders have been delayed for causes, such as weather, that are beyond their control." Plaintiff argues that Conscoop represents "an important segment of bidders" because only seven offerors submitted technical proposals and Conscoop was the "low priced offeror." Consequently, plaintiff contends that the Navy was required to use its discretion to extend the price proposal due date to the benefit of plaintiff in order to achieve the lowest price.

Although plaintiff attempts to rely on GAO cases in this regard, the GAO offers no support, stating that "one delayed bid [out of four submitted] is not an 'important segment' within the meaning of FAR, 48 C.F.R. § 14.402–3. One affected bidder is insufficient to warrant postponement of bid opening." *Goodwin Contractors,* B–228336, 87–2 CPD ¶ 604, 1987 WL 103322, at *4 (Comp. Gen. Dec.17, 1987) (discussing 48 C.F.R. § 14.402–3); *see also Nikon, Inc.,* 1983 WL 26657, at * 2 ("it appears that any extension would have been for the benefit of only one bidder, and the contracting officer therefore could not have granted the request."); *MTS Sys. Corp.,* 1980 WL 14520, at * 1 ("there is no evidence that any other offeror was precluded from submitting a timely offer by the

weather conditions."). In the instant case, pursuant to common sense and GAO guidance, Conscoop does not represent "an important segment of bidders."

Conscoop further argues that subparagraph FAR 52.215–1(f)(3) permits the Navy to accept its late price proposal. The provision states that the "Government may waive informalities and minor irregularities in proposals received." FAR 52.215–1(f)(3). Plaintiff cites *Griffy's Landscape Maintenance LLC v. United States,* arguing: "[i]t is clear that like in *Griffy's,* Conscoop's proposal ... was only a portion of the entire proposal because the entire technical proposal was already submitted and accepted." *Griffy's Landscape Maintenance LLC v. United States,* 46 Fed.Cl. 257 (2000). In *Griffy's Landscape Maintenance,* the missing, minor information was plaintiff's insurance contact information, which the *Griffy's* court suggested may have been retrievable from the government's own files and which that court characterized as a "clerical mistake." *Id.* at 258–59. By contrast, a late price proposal cannot be characterized as an informality, or a minor irregularity. A price proposal is a critical portion of the offer; there is no offer without the price proposal.

Finally, plaintiff claims that the Navy failed to perform any reasoned analysis to determine whether or not grounds existed to extend the price proposal deadline. The record, however, does not support this assertion. The record demonstrates that both the contracting specialist and the contracting officer evaluated whether the government could consider Conscoop's price proposal and both concluded that Conscoop's proposal was late. In addition, they found that Conscoop's late price proposal did not fall within any of the exceptions detailed in FAR 52.215–1(c)(3). The record also indicates that Navy legal counsel was consulted before the decision to reject plaintiff's offer was made by the government.

In conclusion, based on the law and the evidentiary record, the court finds that the Navy properly rejected Conscoop's price proposal as untimely. The record establishes that Conscoop's price proposal was received at the designated e-mail address after the 2:00 p.m. Italian time deadline set forth in the solicitation. In addition, Conscoop's untimely price proposal did not fall within any of the FAR exceptions permitting acceptance of a late offer. Therefore, the contracting officer's decision to reject Conscoop's price proposal as untimely was not arbitrary and capricious, nor an abuse of discretion.

## IV. Injunctive Relief

The plaintiff seeks permanent injunctive relief requiring the Navy to: (1) cancel the award of the solicitation to Lotos; (2) evaluate Conscoop's price proposal, as submitted; and (3) award the solicitation to Conscoop, since its price proposal is lower than that of Lotos. Plaintiff alleges that it will incur 1,118,714 Euros in lost profits, if injunctive relief is not granted. Courts should interfere with the government procurement process "only in extremely limited circumstances." *Banknote Corp. of Am., Inc. v. United States,* 56 Fed.Cl. at 380 (quoting *CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1581 (Fed.Cir.1983) (quoting *United States v. John C. Grimberg Co.,* 702 F.2d at 1372, *aff'd,* 365 F.3d 1345 (Fed.Cir.2004))); *see also ManTech Telecomms. and Info. Sys. Corp. v. United States,* 49 Fed.Cl. at 64 (emphasizing that injunctive relief is not routinely granted) (citing *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)). Because injunctive relief is extraordinary in nature, a plaintiff must demonstrate the right to such relief by clear and convincing evidence. *Bannum, Inc. v. United States,* 56 Fed.Cl. 453, 457 (2003) (quoting *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522 (1991)); *Seattle Sec. Servs., Inc. v. United States,* 45 Fed.Cl. 560, 566 (2000); *Delbert Wheeler Constr., Inc. v. United States,* 39 Fed.Cl. 239, 251 (1997), *aff'd,* 155 F.3d 566 (Fed.Cir.1998) (table); *Compliance Corp. v. United States,* 22 Cl.Ct. 193, 206 & n. 10 (1990), *aff'd,* 960 F.2d 157 (Fed. Cir.1992) (table); *but see Magnavox Elec. Sys. Co. v. United States,* 26 Cl.Ct. 1373, 1378 & n. 6 (1992). The decision on whether or not to grant an injunction is within the sound discretion of the trial court. *See FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed. Cir.1993); *Asociacion Colombiana de Expor-*

*tadores de Flores v. United States*, 916 F.2d 1571, 1578 (Fed.Cir.1990). Once injunctive relief is denied, "the movant faces a heavy burden of showing that the trial court abused its discretion, committed an error of law, or seriously misjudged the evidence." *FMC Corp. v. United States*, 3 F.3d at 427.

To obtain a temporary restraining order or preliminary injunction, the plaintiff must carry the burden of establishing entitlement to extraordinary relief based on the following factors:

> (1) the likelihood of plaintiff's success on the merits of its complaint; (2) whether plaintiff will suffer irreparable harm if the procurement is not enjoined; (3) whether the balance of hardships tips in the plaintiff's favor; and (4) whether a preliminary injunction will be contrary to the public interest.

*ES–KO, Inc. v. United States*, 44 Fed.Cl. 429, 432 (1999) (citing *FMC Corp. v. United States*, 3 F.3d at 427); *see also Seaborn Health Care, Inc. v. United States*, 55 Fed. Cl. 520, 523–24 (2003); *OAO Corp. v. United States*, 49 Fed.Cl. 478, 480 (2001) (" 'When deciding if a TRO is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction.' ") (quoting *W & D Ships Deck Works, Inc. v. United States*, 39 Fed.Cl. 638, 647 (1997)); *Dynacs Eng'g Co. v. United States*, 48 Fed.Cl. 614, 616 (2001). The United States Court of Appeals for the Federal Circuit, in *FMC Corporation v. United States*, noted that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d at 427 (citations omitted).

The test for a permanent injunction is almost identical to that for a temporary restraining order or preliminary injunction, but rather than the likelihood of success on the merits, a permanent injunction requires success on the merits. The court in *Bean Stuyvesant, L.L.C. v. United States* set out the test:

> (1) [A]ctual success on the merits; (2) that [plaintiff] will suffer irreparable injury if injunctive relief were not granted; (3) that, if the injunction were not granted, the harm to plaintiff outweighs the harm to the Government and third parties; and (4) that granting the injunction serves the public interest.

*Bean Stuyvesant, L.L.C. v. United States*, 48 Fed.Cl. 303, 320–21 (2000) (citing *Hawpe Constr., Inc. v. United States*, 46 Fed.Cl. 571, 582 (2000), *aff'd*, 10 Fed.Appx. 957 (Fed.Cir. 2001)); *see also ATA Defense Indus., Inc. v. United States*, 38 Fed.Cl. 489, 505 n. 10 (1997) (" 'The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.' ") (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)).

In the case currently before the court, since the plaintiff does not prevail on the merits, it has failed to satisfy the first requirement for obtaining injunctive relief. Given the balancing test for injunctive relief, the remaining factors do not, under the present facts, overcome plaintiff's failure to prevail on the merits. Therefore, plaintiff's motion for injunctive relief is denied.

## CONCLUSION

Conscoop's price proposal was received at the designated e-mail address after the 2:00 p.m. Naples, Italy time deadline set forth in the solicitation. Conscoop's untimely price proposal did not fall within any of the FAR exceptions permitting the acceptance and consideration of late offers. The Navy's rejection of Conscoop's price proposal as untimely was not arbitrary or capricious, nor was it an abuse of discretion. Plaintiff's motion for judgment on the administrative record is **DENIED** and defendant's motion for judgment on the administrative record is **GRANTED.** The plaintiff's motion for in-

junctive relief also is **DENIED**. The clerk's office shall **DISMISS** the complaint, with prejudice, and shall enter **JUDGMENT** for the defendant consistent with this opinion.

   **IT IS SO ORDERED.**